# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00318-CV

**Texas State Board of Veterinary Medical Examiners, Appellant**

**v.**

**Gene Giggleman, DVM, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-11-000041, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

### O P I N I O N

The principal issue presented in this appeal, which arises from a mandamus suit brought by a requestor under the Texas Public Information Act (PIA),[1] is whether the requestor "substantially prevailed," so as to qualify for an attorney's-fees award under the PIA,[2] where he obtained an interlocutory summary judgment on his mandamus claim but that claim was ultimately rendered moot prior to final judgment. Under the circumstances here, we conclude he did not. We likewise hold that the requestor could not use the Uniform Declaratory Judgments Act (UDJA)[3] as a vehicle for recovering the attorney's fees he sought.

---

[1]  *See* Tex. Gov't Code §§ 552.321 (suit for writ of mandamus); *see generally id.* §§ 552.001–.353 (provision of PIA).

[2]  *See id.* § 552.323(a).

[3]  The UDJA is codified at Tex. Civ. Prac. & Rem. Code §§ 37.001–.011.

**BACKGROUND**

As its name suggests, appellant Texas State Board of Veterinary Medical Examiners (Board) is the Texas state government agency that licenses and regulates veterinarians within this state.[4] Appellee Gene Giggleman is a veterinarian who is licensed and regulated by the Board. In 2010, Dr. Giggleman was the target of a disciplinary complaint filed with the Board by PETA (People for the Ethical Treatment of Animals).[5] The complaint alleged that Giggleman had committed various forms of professional misconduct as "attending veterinarian" for U.S. Global Exotics (USGE), a now-defunct Arlington business that had been engaged in the import and sale of exotic animals before being raided and shut down by federal and state authorities in 2009.[6] PETA's complaint was in the form of a nine-page letter asserting numerous allegations against Giggleman and referring, as support, to several accompanying "exhibits" of evidence, including photographs and videotape, that had been surreptitiously gathered by an organization operative who had infiltrated USGE for several months before going to authorities.

Although the disciplinary complaint against Giggleman would ultimately culminate in an agreed formal reprimand and probated license suspension for "unprofessional/dishonorable

---

[4] *See* Tex. Occ. Code §§ 801.151 (rules), .252 (license).

[5] *See id.* §§ 801.159, .201–.206 (requiring Board to "investigate" and timely dispose of "complaints" against veterinarians, charging the Board with promulgating rules to that end, and prescribing certain requirements for the rules and procedures the Board adopts).

[6] *See, e.g.*, Susan Schrock, *20,000 Exotic Animals—and Hundreds More Dead Ones—Seized at Arlington Pet Wholesaler*, Star Telegram, Dec. 16, 2009, at B1.  According to the news accounts, authorities seized approximately 27,000 animals that were later found to have been treated cruelly.

2

conduct,"[7] the present appeal centers solely on whether Giggleman can recover attorney's fees he incurred during what was essentially a discovery dispute arising shortly after the complaint was filed. The filing of the complaint triggered Board rules that, at relevant times, required the agency to assign an investigator and send "a copy of the complaint . . . to the licensee, along with a request that the licensee respond to the complaint in writing within 21 days of receipt of the request." 22 Tex. Admin. Code § 575.28(6) (2010) (Texas Bd. of Veterinary Med. Exam'rs, Complaints—Investigations) *amended by* 36 Tex. Reg. 142 (2011) (effective Jan. 18, 2011) (hereinafter cited as "Former 22 Tex. Admin. Code § 575.28);[8] *see also* Tex. Att'y Gen. OR2009-683, at 2 (observing that "the Board's rules have required the investigator to release the complaint to the licensee since 1994"). However, the Board's enabling statute provides that "a[n] investigation record of the board, including a record relating to a complaint that is found to be groundless, is confidential." Tex. Occ. Code § 801.027(b). In response to requests from the Board, the Attorney General had construed the "investigation records" made "confidential" by section 801.027(b) to include the "complaint" that triggers the investigation, *see* Tex. Att'y Gen. OR2006-10465, at 1–2, but also determined that this statute, read in context with other statutory provisions prescribing procedures for investigating complaints, left the Board room to make limited disclosure of the "complaint" to the licensee as part of its investigative process, as its rules required. *See* Tex. Att'y Gen. OR2009-683, at 2–5. The dispute that arose between Giggleman and the Board presented what

---

[7] *Texas Board of Veterinary Medical Examiners Disciplinary Actions* p. 13 (July 17, 2013)*, available at* www.tbvme.state.tx.us/disciplinary.php (last visited Aug. 7, 2013).

[8] The 2011 version has also since been amended, but those changes, like the 2011 changes, are not material here. *See* 38 Tex. Reg. 2762 (effective May 12, 2013); 37 Tex. Reg. 6311 (effective Aug. 26, 2012); 36 Tex. Reg. 142 (effective Jan. 18, 2011).

was apparently a new wrinkle regarding the relationship between section 801.027(b)'s confidentiality protection and the Board's rules requiring disclosure of "complaints"—whether the "complaint" the Board could or must disclose to Giggleman included not only PETA's allegations, but also the accompanying exhibits.

The dispute arose after the Board, in purported compliance with its rules, wrote Giggleman and gave notice that it had received a "complaint" pertaining to his practice of veterinary medicine, attached a copy of PETA's letter—without the accompanying exhibits—and gave Giggleman 21 days to furnish a narrative response to "the facts and circumstances surrounding the allegations contained in this complaint." *See* Former 22 Tex. Admin. Code § 575.28(6). Giggleman, through counsel, wrote back asserting that "documents that were a part of the Complaint were not provided" to him, and requested copies of the accompanying exhibits. Treating Giggleman's letter as a request under the PIA, the Board forwarded it to the Attorney General and requested an opinion as to whether the exhibits Giggleman was seeking were shielded from disclosure by Occupations Code section 801.207(b) and PIA section 552.101. *See* Tex. Occ. Code § 801.207(b) (making Board's investigation records confidential); Tex. Gov't Code §§ 552.101 (excepting from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision"); .301 (requiring that governmental body request Attorney General's decision when it receives "a written request for information that it wishes to withhold from public disclosure and that it considers to be within one of the exceptions under Subchapter C").[9] The Attorney General

---

[9] Although the Board failed to submit its request by the ten-day deadline imposed by PIA section 552.301, *see* Tex. Gov't Code § 552.301(b), such failure did not automatically require it to release the information because the confidentiality requirement imposed by Occupations Code section 807.027(b) would, if established, constitute a "compelling reason to withhold the

4

determined that the exhibits were "confidential under section 801.027 of the Occupations Code and must be withheld from disclosure under section 552.101." Tex. Att'y Gen. OR2010-16424, at 1.

In response to the Attorney General's adverse decision, Giggleman filed suit against the Board in Travis County district court seeking a writ of mandamus to compel the agency to release the exhibits to him. Although Giggleman did not explicitly mention the statute in any of his pleadings in the case, the parties agree that he necessarily invoked section 552.321 of the PIA, which waives sovereign immunity so as to permit a requestor to "file suit for a writ of mandamus compelling a governmental body to make information available for public inspection" if the governmental body refuses to supply information that the requestor contends is public information. *See* Tex. Gov't Code § 552.321; *see also, e.g.*, *Texas Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 411 (Tex. App.—Austin 1992, no writ) (construing parallel provisions of predecessor statute).[10]

Giggleman further requested attorney's fees. PIA section 552.323, subsection (a), requires that "the court shall assess costs of litigation and reasonable attorney fees incurred by a

---

information." *See id*. § 552.302 ("If a governmental body does not request an attorney general decision as provided by Section 552.301 . . . the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information."); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 364 (Tex. 2000).

[10] Indeed, as we explain below, Giggleman had no other conceivable means of avoiding the sovereign immunity that would otherwise bar his claim against the Board. *Cf. City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (explaining that a suit to compel performance of a "purely ministerial act"—a type of claim potentially within the "ultra vires" exception to sovereign immunity—must be asserted against the relevant governmental official, in his official capacity, not against the state or governmental agencies, who remain immune); *see also Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (emphasizing that plaintiff's reliance on the UDJA does not change this analysis absent a challenge to the validity of the statute defining official authority).

plaintiff who substantially prevails" in a mandamus suit under section 552.301, "except that the court may not assess those costs and fees against a governmental body if the court finds that the governmental body acted in reasonable reliance on," inter alia, "a written decision of the attorney general." Tex. Gov't Code § 552.323(a). However, as with his mandamus claim, Giggleman did not explicitly invoke PIA section 552.323(a) as a basis for his attorney's-fees claim. Instead, he cited the UDJA's attorney's-fees provision—"Tex. Civ. Prac. & Rem. Code § 37.009"—and, tracking that statute, "request[ed] that the Court award him costs and reasonable and necessary attorney fees as equitable and just." *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under [the UDJA], the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

Subsequently, the parties filed cross-motions for summary judgment as to Giggleman's mandamus claim; neither motion addressed his pending attorney's-fees claim. In support of his motion, Giggleman argued that the "complaint" the Board's rules required it to provide him included any exhibits or attachments, and that Occupation Code section 801.027(b) was no bar because, contrary to the Attorney General's view, the "investigation record of the board" made confidential by that statute logically could not include the "complaint" that had triggered the investigation. In contrast, while the Board agreed that the exhibits were part of PETA's "complaint," it insisted that section 801.027(b) and the Board's rules gave it discretion to produce only PETA's allegations to Giggleman while withholding the accompanying exhibits. Following a hearing, the district court granted Giggleman's summary-judgment motion and denied the Board's.[11] The order

---

[11] Although the Hon. Stephen Yelenosky ultimately signed the final judgment, as reflected in our caption above, the Hon. Margaret Cooper signed the summary-judgment order.

6

explicitly acknowledged that it was interlocutory and that Giggleman's pending attorney's-fees claim remained to be determined.

Following the summary-judgment hearing, but a few days before the district court had signed the order, the Board had filed a plea to the jurisdiction invoking sovereign immunity as a bar to Giggleman's attorney's-fees claim.[12] The Board argued that Giggleman could not recover fees under UDJA section 37.009 because he had not asserted any claim under that statute. *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("*In any proceeding under this chapter*, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.") (emphasis added). It further argued that it had reasonably relied on Attorney General decisions in withholding the exhibits, thereby negating an award under PIA 552.323(a). *See* Tex. Gov't Code § 552.323(a). In response to the Board's plea to the jurisdiction, Giggleman filed—on what turned out to be the same day and less than five hours before the district court signed its summary-judgment order, but without leave of court[13]—an amended pleading (his "Second Amended Petition for Writ of Mandamus and Declaratory Judgment") that added two explicit requests for declaratory relief on top of the mandamus relief he had previously requested:

---

[12] The Board filed this plea on the day after the district court issued a letter to the parties announcing its intended ruling on the summary-judgment motions and requesting Giggleman's counsel to draft an appropriate order.

[13] *See* Tex. R. Civ. P. 63 ("within seven days of the date of trial," any amended pleadings "shall be filed only after leave of the judge is obtained"); *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) ("A summary judgment proceeding is a trial within the meaning of Rule 63."); *Domizio v. Progressive Cnty. Mut. Ins. Co.*, 54 S.W.3d 867, 876 (Tex. App.—Austin 2001, pet. denied) (same).

7

- "that the term 'the complaint' as used in Section 575.28(6) of the Texas Administrative Code includes the withheld materials and Section 575.28(6), the 5th Amendment to the U.S. Constitution and Article I, §§ 10 & 19 of the Texas Constitution therefore require the [Board] to send copies of such records to Dr. Giggleman."

- "that Section 801.207 of the Texas Occupations Code does not restrict the [Board] from disclosing a complaint to the licensee."[14]

The amended pleading prompted the Board to file a second plea to the jurisdiction seeking dismissal of any new declaratory claims that the instrument had added. The Board urged that such claims were redundant of Giggleman's PIA mandamus claim and mere vehicles for obtaining attorney's fees. To similar effect, the Board would later file a "Motion for Judgment" urging that an award of UDJA attorney's fees would run afoul of *Jackson v. State Office of Administrative Hearings*, 351 S.W.3d 290 (Tex. 2011).

Ultimately, in advance of a final hearing that the parties had scheduled, the Board produced to Giggleman all of the exhibits that had been the original focus of the parties' dispute. The Board then filed a third plea to the jurisdiction seeking dismissal of Giggleman's suit on grounds of mootness.

The final hearing went forward as scheduled. At the outset of the hearing, the district court denied each of the Board's three pleas to the jurisdiction by written order. It then heard evidence from Giggleman as to the attorney's fees he had incurred. Following the hearing, the court signed a final judgment acknowledging that the Board had "produced to Dr. Giggleman the entire complaint filed against him" and awarding no relief other than attorney's fees in the amount of

---

[14] The amendments also added ". . . and Declaratory Judgment" to the title of the petition; previous iterations had been styled only as a "Petition for Writ of Mandamus."

approximately $33,000 found to have been incurred through time of trial, plus over $70,000 in conditional appellate attorney's fees. The judgment and subsequent findings of fact and conclusions of law elaborated that the award was based alternatively on PIA 552.323(a)—with the district court concluding that Giggleman had "substantially prevailed" on his PIA mandamus claim and that the Board had not reasonably relied on any Attorney General opinions in withholding the exhibits, *see* Tex. Govt Code § 552.3023(a)—and on UDJA section 37.009, with the court concluding that Giggleman had asserted a UDJA claim that was "not merely incidental to his Public Information Act claim."

The Board perfected this appeal.

## ANALYSIS

Texas's common law has long followed, and continues to follow, the "American Rule"—parties to litigation bear their own attorney's fees unless such expenses are specifically made recoverable by statute or contract. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). Further, a party can recover attorney's fees from a state agency like the Board only to the extent the Legislature has waived sovereign immunity. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–854, 860 (Tex. 2002). The district court's judgment—which, again, awarded no relief to Giggleman other than attorney's fees—was predicated on two alternative statutory waivers of sovereign immunity to authorize attorney's-fees awards, PIA section 552.323(a) and UDJA section 37.009. On appeal, the Board brings two issues

challenging, respectively, UDJA section 37.009 and PIA section 552.323(a) as potential statutory bases for the award.

**PIA section 552.323(a)**

We will begin with the Board's second issue, in which it addresses Giggleman's entitlement to attorney's fees under PIA section 552.323(a). While acknowledging that Giggleman asserted a type of claim that could potentially serve as a predicate for an attorney's-fees award under this statute—a mandamus claim under PIA section 552.321, *see* Tex. Gov't Code § 552.323(a)—the Board disputes whether Giggleman properly pled that theory of recovery. Although Giggleman prayed for attorney's fees, the Board observes, his pleadings purported to rely instead on UDJA section 37.009 and never mentioned the PIA provision. And even if Giggleman sufficiently pled for attorney's fees under PIA section 552.323(a), the Board added, Giggleman did not meet that statute's requirement that he "substantially prevail" on his mandamus claim in order to recover. *See id*. Alternatively, even if Giggleman "substantially prevailed" on his mandamus claim, the Board insists that he would still be barred from recovering because it reasonably relied on the Attorney General's ruling that it must withhold the exhibits from him. *See id.*

The Board's attack on the sufficiency of Giggleman's pleadings as to attorney's fees is without merit. PIA section 522.323 makes an award of attorney's fees mandatory—i.e., automatic—if the plaintiff "substantially prevails," unless the Board obtains a finding that it reasonably relied on an Attorney General opinion or other law:

(a)     In an action brought under Section 552.321 or 552.3215, the court *shall assess* costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails, except that the court may not assess those costs

10

and fees against a governmental body if the court finds that the governmental body acted in reasonable reliance on:

> (1) a judgment or an order of a court applicable to the governmental body;

*Id.* § 552.323(a)(1) (emphasis added). Thus, to the extent that Giggleman ultimately "substantially prevailed" so as to be entitled to a mandatory award absent a finding of reasonable reliance, how Giggleman asked for the attorney's fees is irrelevant. *See RDG P'ship v. Long*, 350 S.W.3d 262, 277 (Tex. App.—San Antonio 2011, no pet.) ("If a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover under it.") (citing *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Further, although Giggleman's pleadings expressly sought recovery of his attorney's fees under the UDJA, pleading an incorrect or inapplicable theory or statute does not preclude an award of attorney's fees. *See id.* (holding that attorney's-fees award not precluded under different statute than one pleaded). Finally, Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). In its first plea to the jurisdiction in response to Giggleman's claims, the Board attacked section 552.323(a) as a basis for attorney's fees. To that extent, the Board was operating as if Giggleman had properly plead for attorney's fees under the PIA and, at the very least, the Board had fair notice of the mandatory fees available under the PIA.

However, while Giggleman may have sufficiently pled an attorney's-fees claim under PIA section 552.323(a), we agree with the Board that he did not meet that statute's

11

requirement of "substantially prevailing" on his PIA mandamus claim. As this Court has previously observed, PIA 552.323(a)'s "substantially prevail" requirement incorporates the concept of a "prevailing party," and thus must be construed in line with the Texas Supreme Court's recent jurisprudence, derived from federal jurisprudence, addressing prevailing-party requirements for recovering attorney's fees. *See Dallas Morning News, Inc. v. City of Arlington*, No. 03-10-00192-CV, 2011 WL 182886, at \*2–4 (Tex. App.—Austin 2011, no pet.) (construing PIA section 552.323(a) in accordance with *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653–54 (Tex. 2009) and federal antecedents, principally *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)); *see also Gattis v. Duty*, 349 S.W.3d 193, 201–02 (Tex. App.—Austin 2011, no pet.) (applying the same analysis when construing parallel "substantially prevail" language in attorney's-fees provision of Texas Open Meetings Act).[15] Following the reasoning of federal jurisprudence, the Texas Supreme Court has held that a plaintiff does not "prevail" for purposes of qualifying for attorney's fees unless it obtains (1) judicially sanctioned "relief on the merits" of its claim that (2) "materially alters the legal relationship between the parties." *Intercontinental*, 295 S.W.3d at 653–54 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)); *accord Dallas Morning News, Inc.*, 2011 WL 182886, at \*3. This requires "an enforceable judgment against the defendant from whom fees are sought, or

---

[15] Moreover, as we noted in *Dallas Morning News*, federal courts had similarly concluded (at least prior to 2007 amendments to the statute) that a "substantially prevail" requirement for recovering attorney's fees under the federal Freedom of Information Act (FOIA) must be construed in accordance with *Buckhannon*. *See Dallas Morning News, Inc. v. City of Arlington*, No. 03-10-00192-CV, 2011 WL 182886, at \*3 (Tex. App.—Austin 2011, no pet.) (mem. op.) (citing *Environmental Conservation Org. v. City of Dallas*, 307 Fed. App'x. 781, 784 n. 1 (5th Cir. 2008)); *cf.* S. 2488, 110th Cong. § 4 (2007) (legislation amending FOIA in response to *Buckhannon*).

12

comparable relief through a consent decree or settlement." *Intercontinental*, 295 S.W.3d at 654 (quoting *Farrar*, 506 U.S. at 111–12). Consequently, "the judgment," not preliminary rulings or findings, "is critical to the prevailing-party determination." *See id.* at 656 (citing *Buckhannon*, 532 U.S. at 603–04); *accord Dallas Morning News, Inc.*, 2011 WL 182886 *3; *Wibbenmeyer v. TechTerra Commc'ns, Inc.*, No. 03-09-00122-CV, 2010 WL 1173072, at *7 (Tex. App.—Austin 2010, pet. denied) (mem. op.) (citing same). Likewise, a plaintiff does not become a "prevailing party" merely because the defendant voluntarily changes its conduct in a manner mooting the controversy. *See Buckhannon*, 532 U.S. at 605–06.

Applying these principles to the record here, we observe that the district court's final judgment did not award Giggleman any relief on his mandamus claim. In fact, Giggleman's mandamus claim was rendered moot before final judgment when the Board had eventually produced the disputed exhibits to him, obviating any justiciable controversy regarding his entitlement to the writ. *See Speer v. Presbyterian Children's Home and Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (dismissing case as moot, including pending claim for attorney's fees, because the action sought to be enjoined had been accomplished and "suitable coercive relief" became impossible); *Gattis*, 349 S.W.3d at 202 (holding that pending attorney's-fees claims did not preserve live controversy because the claim on which it was predicated was rendered moot); *see also Buckhannon*, 532 U.S. at 605–06 (plaintiff does not "prevail" through a defendant's voluntary change in conduct that moots the controversy). But the evident basis for the district court's conclusion that Giggleman had nonetheless "substantially prevailed" is that the Board did not produce the exhibits until after the court had already granted him summary judgment on his mandamus claim. Consequently, we

13

must examine the district court's summary-judgment order to determine if it makes any difference in our analysis.

The summary-judgment order granted Giggleman the following relief:

> ORDERED, ADJUDGED AND DECREED that [the Board's] Motion for Summary Judgment is denied and that [Giggleman's] Motion for Summary Judgment is granted. It is further
>
> ORDERED, ADJUDGED AND DECREED that the word "complaint" as used in Texas Occupations Code Chapter 801 and in Texas Administrative Code Title 22, Part 24, Chapter 575, Section 575.28(6) means all documents and materials provided to the [Board] by a complainant and upon which the [Board] initiates a request for a response from the licensee. It is further
>
> ORDERED, ADJUDGED AND DECREED that [the Board] shall produce to [Giggleman] the entire complaint which [was] sent to [the Board] . . ., including all of the exhibits or attachment thereto, within 30 days of this Order becoming final and appealable. It is further
>
> ORDERED, ADJUDGED AND DECREED that this case shall remain on the docket of this Court to determine the allocation of attorney's fees as is just and equitable.

While perhaps boding well for Giggleman's future prospects in seeking mandamus relief, we cannot agree that the order in itself constituted his "substantially prevailing" on that claim. Even if the order could be said to award relief on "the merits" of his mandamus claim, it effected no material change in the parties' legal relationship. *See Intercontinental*, 295 S.W.3d at 655 (quoting *Farrar*, 506 U.S. at 111–12). This is so because the order is not an "enforceable judgment," but only a preliminary ruling—by its terms, it is interlocutory, and therefore contingent upon future events prior to final judgment. *See Bobbitt v. Cantu*, 992 S.W.2d 709, 711 (Tex. App.—Austin 1999, no pet.) (describing interlocutory order as "leav[ing] something further to be determined and adjudicated in

14

disposing of the parties and their rights." (citing *Taliaferro v. Texas Commerce Bank*, 660 S.W.2d 151, 152 (Tex. App.—Fort Worth 1983, no writ) (citing *Kinney v. Tri–State Tel. Co.*, 222 S.W. 227, 230 (Tex. 1920))). Indeed, the order did not survive into the final judgment, but was impliedly vacated in light of intervening events that rendered the underlying mandamus claim moot. Similarly, to the extent the order granted any relief in the nature of mandamus or injunction, it makes that relief effective only after the judgment becomes final, thus leaving it contingent upon future events. *Id.* As for the district court's underlying construction of the relevant statutes and rules, these are mere "judicial pronouncements . . . unaccompanied by judicial relief," and are not sufficient to make Giggleman a prevailing party. *See Buckhannon*, 532 U.S. at 606; *Hewitt v. Helms*, 482 U.S. 755, 761 (1987); *see also Thomas v. National Sci. Found.*, 330 F.3D 486, 494 (rejecting prevailing-party status in attorney's-fees issue because partial summary judgment did not afford any "concrete relief"); *Intercontinental*, 295 S.W.3d at 659–60 (discussing effect of jury findings of liability without any relief awarded in the judgment).

In contending otherwise, Giggleman refers us to authorities recognizing that a pending attorney's-fees claim may in some instances remain live and justiciable even while the predicate claims for relief have been rendered moot. *See, e.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642–43 (Tex. 2005); *Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *see also Griffin v. Birkman*, 266 S.W.3d 189, 194 (Tex. App.—Austin 2008, pet. denied) (rejecting motion to dismiss appeal for mootness because dispute over attorney's fees remained pending). To the extent this can occur, it is a function of attorney's-fees statutes that do not impose a prevailing-party requirement, such as UDJA section 37.009. *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under [UDJA], the court may award costs and reasonable

and necessary attorney's fees as are equitable and just."); *Hallman*, 159 S.W.3d at 642–43; *Camarena*, 754 S.W.2d at 151; *Griffin*, 266 S.W.3d at 194. Because an attorney's-fees claimant need not "prevail" in order to recover under such statutes, a pending fees claim may conceivably preserve a live controversy even where the cause of action is otherwise rendered moot. *See Gattis*, 349 S.W.3d at 201–02 (comparing Government Code section 551.142(b) of Open Meetings Act, which allows attorney's fees for party who "substantially prevails," with section 37.009 of Civil Practice and Remedies Code, which does not). But Giggleman's attorney's-fees claim under PIA section 552.323(a) had no such effect because it became impossible for him to satisfy that statute's "substantially prevail" requirement once his mandamus claim became moot. *See id.* (similarly concluding that party's attorney's-fees claim under Open Meetings Act was rendered moot when underlying claim became moot and party could no longer "substantially prevail"). To the contrary, his attorney's-fees claim under PIA section 552.323(a) likewise became moot. *See id.*

Beyond his misplaced reliance on cases like *Hallman* and *Camarena*, Giggleman urges that "basic considerations of policy" warrant our holding that he "substantially prevailed" under PIA section 552.323(a). He urges that a contrary conclusion would create "bizarre incentives" for plaintiffs in PIA cases to bypass summary judgment and instead go to trial in order to preserve their rights to attorney's fees, while enabling governmental bodies to thwart claims for attorney's fees incurred through protracted litigation "simply by providing the relief originally sought by plaintiffs" late in the case. Leaving aside the merits of Giggleman's policy observations,[16] his

---

[16] As the Board observes, a PIA plaintiff could avoid Giggleman's plight by moving for final summary judgment on both his mandamus and attorney's-fees claims. As for inviting perceived abuses by defendants, the Board emphasizes that a governmental body could thwart an attorney's-fees claim in this manner only at the expense of waiving its rights to further resist production, including the right to appeal adverse rulings by the trial court.

16

remedy for these perceived injustices would lie in the Legislature rather than the Judicial Branch. *See MBM*, 292 S.W.3d at 671 (noting that whether policy is wise "is for the Legislature, not the courts, to decide") (quoting *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 896 (Tex. 1962)); *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (noting that "[i]t is the Legislature's prerogative to enact statutes," while "it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used"); *cf.* S. 2488, 110th Cong. § 4 (2007) (legislation amending FOIA to add definition of "substantially prevailed" following decision in *Buckhannon*).

Because Giggleman did not "substantially prevail" on his PIA mandamus claim as a matter of law, and that claim was rendered moot prior to final judgment, his accompanying claim for attorney's fees under PIA section 552.323(a) was likewise rendered moot. *See Gattis*, 349 S.W.3d at 202 (holding that pending attorney's-fees claims did not preserve live controversy because failure to obtain affirmative relief precluded attorney's-fees award predicated on requirement that party "substantially prevail"). Consequently, the district court lacked subject-matter jurisdiction to award attorney's fees on that basis. *See University of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100–01 (Tex. 2006) (per curiam) (mootness deprives courts of subject-matter jurisdiction); *Gattis*, 349 S.W.3d at 202 (same). We sustain the Board's second issue, and need not reach its contentions regarding reasonable reliance. *See* Tex. R. App. P. 47.1.

**UDJA section 37.009**

In its first issue, the Board challenges the other asserted statutory basis for the judgment award of attorney's fees, UDJA section 37.009. As previously noted, section 37.009, unlike PIA section 552.323(a), does not impose a prevailing-party requirement for recovery, but

merely grants the trial court discretion to "award costs and reasonable and necessary attorney's fees as are equitable and just" incurred in prosecuting a UDJA claim. *See* Tex. Civ. Prac. & Rem. Code § 37.009. Consequently, a claim for attorney's fees under UDJA section 37.009 could, in theory, survive the mootness of the predicate claim for declaratory relief, as it may be "just and equitable" to award attorney's fees incurred in prosecuting the claim until that time. *See Hallman*, 159 S.W.3d at 642–43; *Camarena*, 754 S.W.2d at 151; *Griffin*, 266 S.W.3d at 194.

But such fees still must be predicated on a claim for declaratory relief "under this chapter," *see* Tex. Civ. Prac. & Rem. Code § 37.009, and the Board asserts that Giggleman never asserted a claim for attorney's fees under the UDJA, at least before the summary-judgment hearing.[17] To the extent Giggleman did ever assert a UDJA declaratory claim, the Board adds, it still could not serve as a basis for recovering attorney's fees. In support, the Board refers us to the Texas Supreme Court's recent decisions recognizing limitations on the use of the UDJA to recover attorney's fees where the predicate claim for declaratory relief is redundant of or incidental to a claim for relief under another statute. *See Jackson*, 351 S.W.3d at 300–01; *MBM*, 292 S.W.3d at 669–70.

In *MBM*, which involved underlying claims for breach of contract, fraud, and declaratory judgment, the supreme court rejected the argument that attorney's fees could be supported by UDJA claims because those claims were "part and parcel" and "duplicative" of the failed breach of contract and fraud claims, holding that "a party cannot use the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees." *See MBM*, 292 S.W.3d at 669–70. In *Jackson*,

---

[17] Giggleman counters that he asserted what was substantively a UDJA claim in his prior pleadings. We need not resolve this question because, as we explain below, the UDJA could not support the fee award in either event.

the supreme court likewise rejected a similar effort to recover attorney's fees under both the PIA and the UDJA in a dispute involving several open-records requests. *See Jackson*, 351 S.W.3d at 300–01. After first holding that Jackson was not entitled to his attorney's fees under the PIA because, by representing himself, he had not "incurred" those fees as required by the PIA, *see id.* at 300 (citing Tex. Gov't Code § 552.323(a)), the supreme court then held that Jackson was not entitled to attorney's fees under the UDJA because his claims for declaratory relief were incidental to his central theory of relief arising under the PIA. *See id.* at 301.

For at least four reasons, we conclude that Giggleman failed to assert a UDJA claim that was not merely redundant of or incidental to his PIA mandamus claim. The first is that any declaratory claim Giggleman could have asserted under the UDJA would be barred by sovereign immunity, all other things being equal, because (1) Giggleman sued only the Board, thereby implicating sovereign immunity, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (explaining that suits under the "ultra-vires" exception to sovereign immunity must be asserted against the relevant governmental official, in his official capacity, not against the state or governmental agencies, who would remain immune), and (2) he did not seek any declaration against the Board that came within the UDJA's limited waiver of immunity, *see Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (emphasizing that UDJA waives state agencies' immunity only as to claims seeking declarations regarding a statute's validity, not for claims merely seeking construction or enforcement of a statute); *see also Heinrich*, 284 S.W.3d at 370–71 (UDJA does not enlarge a trial court's jurisdiction); *Texas Ass'n of Bus.*, 852 S.W.2d at 444 (UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power"); *Creedmoor-Maha Water Supply Corp. v. Texas*

19

*Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.) (same, quoting *Heinrich*).[18] Nor would this jurisdictional defect be curable at this juncture, as the underlying controversy is now moot. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (noting that opportunity to cure pleading defect is available only if it is possible to cure the defect); *Smith v. Abbott*, 311 S.W.3d 62, 84–85 (Tex. App.—Austin 2010, pet. denied) (holding that party is not entitled to opportunity to replead a claim unless it is possible to cure the jurisdictional defect that was the basis for dismissing the claim).

Second, as Giggleman acknowledges, some of the declarations he purports to seek concern the proper construction of the Board's rules, as opposed to a statute. That sort of claim falls outside the UDJA altogether. *See* Tex. Civ. Prac. & Rem. Code § 37.004 ("A person . . . whose rights, status, or other legal relations are affected by a *statute* [or] *municipal ordinance . . .* may have determined any question of construction or validity arising under the . . . *statute* [or] *ordinance . . .* and obtain a declaration of rights, status, or other legal relations thereunder") (emphases added). And while section 2001.038 of the Administrative Procedure Act authorizes declaratory claims against state agencies concerning the "validity or applicability" of agency rules, *see* Tex. Gov't Code § 2001.038; *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 544 (Tex. App.—Austin 2011, pet. denied), that statute, unlike the UDJA, does not authorize attorney's fees. *See* Tex. Gov't Code § 2001.038; Tex. Civ. Prac. & Rem. Code § 37.004.

---

[18] Although the Board did not raise this precise argument, we consider it sua sponte. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95–96 (Tex. 2012) (holding that sovereign immunity deprives courts of subject-matter jurisdiction and is thus an issue that may be raised for the first time on appeal); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (holding that subject-matter jurisdiction may be raised for first time on appeal by the parties or by the court).

Our third reason, related to the first, is that if there is an underlying justiciable controversy regarding construction of statutes that could provide a jurisdictional basis for the UDJA claims Giggleman purports to assert, *see Heinrich*, 284 S.W.3d at 370–71; *Creedmoor-Maha*, 307 S.W.3d at 515, it must exist solely by virtue of the waiver of sovereign immunity contained in PIA section 552.321. Consequently, any such UDJA claims would, by definition, be merely incidental to the relief Giggleman could obtain through his PIA mandamus claim—and could not be a basis for UDJA attorney's fees. *See Jackson*, 351 S.W.3d at 301.

Our fourth and final reason is Giggleman's own asserted rationale for being permitted to recover UDJA attorney's fees. During oral argument, counsel explained that Giggleman was entitled to UDJA attorney's fees because his PIA mandamus claim implicitly or necessarily required the district court to grant declarations construing the pertinent PIA provisions (or Board rules) as a means of determining his right to mandamus relief. But this would be true for every PIA mandamus case—the court must construe some combination of provisions in the PIA or other law that will govern public access to the information at issue. *Cf. MBM*, 292 S.W.3d at 669 ("If repleading a claim as a declaratory judgment could justify a fees award, attorney's fees would be available to all parties in all cases. That would repeal not only the American Rule but also the limits imposed on fee awards in other statutes."). This is the very use of the UDJA—i.e., as a vehicle for obtaining otherwise impermissible attorney's fees—that the Texas Supreme Court squarely held impermissible in *Jackson* and *MBM*. *See Jackson*, 351 S.W.3d at 301; *MBM*, 292 S.W.3d at 669.[19]

---

[19] Similarly, Giggleman attempts to distinguish *Jackson* as merely addressing the inapposite question of whether an attorney litigating pro se could "incur" attorney's fees that he could potentially recover under the PIA. While *Jackson* does indeed address that issue, Giggleman overlooks or ignores the immediately following portion of the Texas Supreme Court's analysis,

We hold that the district court lacked subject-matter jurisdiction to award Giggleman attorney's fees under the UDJA.  Accordingly, we sustain the Board's first issue.

**CONCLUSION**

We reverse the district court's judgment awarding attorney's fees, and render judgment dismissing Giggleman's claims for attorney's fees for want of subject-matter jurisdiction.[20]

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Reversed and Rendered

Filed:   August 22, 2013

---

discussed above, that is directly relevant to this case.  *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 300 (Tex. 2011).

[20]  In the event that our disposition of either of Giggleman's attorney's-fees claims should be considered to rest upon the merits rather than jurisdiction, we render judgment that Giggleman take nothing on that claim.

22