# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00514-CV

**Texas Department of Agriculture; and Sidney Miller, in His Official Capacity as Commissioner of Agriculture, Appellants**

**v.**

**Wild Boar Meats, L.L.C.; Texas Hog Hunters Association; and Environmental Defense Fund, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-17-000878, HONORABLE GISELA TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from an emergency rule adopted by the Texas Department of Agriculture to allow the use of warfarin-based pesticides to abate the state's burgeoning population of feral hogs. The Department and Sid Miller, the Commissioner of Agriculture, appeal from the denial of their motion to dismiss claims for injunctive and declaratory relief brought by Wild Boar Meats, LLC, and others (collectively, "Wild Boar"). Because Wild Boar's petition for relief has been rendered moot by the Commissioner's decision to withdraw the rule at issue, we will reverse the district court's order denying the motion and render judgment dismissing the case as moot.

## BACKGROUND

The Department of Agriculture regulates the sale and use of pesticides in Texas. *See* Tex. Agric. Code §§ 76.001–.203. In early 2017, the Department adopted an emergency rule to

allow the registration of warfarin as a limited-use pesticide when used for hog abatement. *See* 42 Tex. Reg. 735, 735 (2017) (adopting emergency amendment to 4 Tex. Admin. Code § 7.30, which classifies pesticides). The Department adopted the rule pursuant to provisions of the Administrative Procedure Act ("APA") allowing an agency to adopt emergency rules to comply with new state or federal law or to address an "imminent peril to the public health, welfare, or safety." *See* Tex. Gov't Code § 2001.034(a). In its published announcement of the rule, the Department referred to the growing population of feral hogs as a "serious problem" and indicated that the rule would help mitigate the negative health and economic impact of the hogs. *See* 42 Tex. Reg. at 735. The emergency rule took effect immediately and was to remain in effect until June 5, 2017, when it would expire by its own terms. *Id.* Only one pesticide was registered under this emergency rule—a warfarin-based product known as "Kaput."

Wild Boar Meats, LLC, is a Texas company that purchases feral hogs and hog carcasses from local hunters. Wild Boar and others disagreed with the Department as to whether a warfarin-based product could safely and effectively be used to control the hog population, arguing that the use of warfarin poses a greater threat to Texans than the hogs themselves. Wild Boar sought relief from the district court, seeking a declaration that the Department had violated the APA by adopting the emergency rule without first finding imminent peril and asking the court to enjoin any further reliance on or enforcement of the allegedly void rule. *See* Tex. Gov't Code § 2001.038 ("The validity or applicability of a rule, including an emergency rule . . . may be determined in an action for declaratory judgment . . . ."). In subsequent amended petitions, Wild Boar also asserted an ultra vires theory against the Commissioner and others, asking for a declaration that these officials were

"acting without legal authority, violating their ministerial duties, and acting in conflict with Texas Agriculture Code section 76.046," which governs the registration of certain pesticides. The district court granted a temporary restraining order and scheduled a hearing on a temporary injunction.

In advance of the anticipated injunction hearing, the Department proposed a permanent rule materially identical to the emergency rule but promulgated under the formal rulemaking procedures set forth in the APA. *See* Tex. Gov't Code §§ 2001.021–.033. It published the proposed rule in the *Texas Register*, accepted written comments, and held a public hearing on the rule. *See* 42 Tex. Reg. at 1987–88. The day after the public hearing, the manufacturer of Kaput—the only warfarin-based product registered under the emergency rule—asked the Department to cancel its request for registration under the proposed permanent rule, citing negative publicity and the threat of litigation. The Department withdrew the registration request, canceled Kaput's emergency registration, and then notified the Secretary of State that it was withdrawing the emergency rule. It subsequently withdrew the proposed permanent rule.

After withdrawing the emergency rule, the Department moved to dismiss Wild Boar's petition for lack of subject matter jurisdiction, arguing that all claims were mooted by the rule withdrawal. The district court held a hearing on the motion and other preliminary matters and ultimately denied the motion to dismiss, explaining that the live petition included "a challenge to the Department's interpretation of section 76.046 of the Texas Agriculture Code" and observing that nothing "would prevent [the Department and its officials] from re-engaging" in the acts Wild Boar sought to enjoin through its suit. The Department then perfected this appeal.

3

**DISCUSSION**

"A case becomes moot when a party seeks to obtain a judgment on some controversy when none actually exists; or when a party seeks a judgment on a matter which, when rendered for any reason, cannot have any practical legal effect on a then existing controversy." *City of Shoreacres v. Texas Comm'n of Envtl. Quality*, 166 S.W.3d 825, 831 (Tex. App.—Austin 2005, no pet.) (citing *Pantera Energy Co. v. Railroad Comm'n*, 150 S.W.3d 466, 471 (Tex. App.—Austin 2004, no pet.)). Mootness is a question of justiciability, and we conduct a de novo review of the disposition of a motion to dismiss claims as moot. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 147, 150 (Tex. 2012); *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993); *Pantera Energy*, 150 S.W.3d at 471. To evaluate justiciabililty, "we construe the plaintiff's pleadings liberally, taking all factual assertions as true." *Heckman*, 369 S.W.3d at 150. We look to the substance of the claims pleaded and the remedies sought, not necessarily to the labels the plaintiff uses in the petition for relief. *See, e.g.*, *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 & n.2 (Tex. 2011) (per curiam) (observing that plaintiff "refused to apply the ultra vires label to his suit below" before concluding that ultra vires was nevertheless "the underlying nature of his claim"); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 & n.3 (Tex. 2009) ("[A] litigant's request for declaratory relief does not alter a suit's underlying nature." (citations omitted)).

Wild Boar's petition reveals three distinct but related claims. First, it seeks a declaration under section 2001.038 of the Government Code that the Department failed to abide by the APA provisions governing emergency rule promulgation and that the emergency rule is therefore void. Second, Wild Boar alleges ultra vires conduct by the Commissioner and other officials and

4

asks for a declaration regarding the proper construction of the Department's authority to register pesticides under section 76.046 of the Agriculture Code. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a) (the Uniform Declaratory Judgment Act ("UDJA")) (allowing declaration regarding "any question of construction or validity" of statute where the plaintiff's rights are affected by that statute). Third, Wild Boar asserts a claim for attorney's fees and costs.

### *The APA claim*

In its first issue, the Department argues the district court erred by failing to dismiss Wild Boar's APA claim as moot once the Department abandoned the challenged rule. We agree. The emergency rule was withdrawn in April of 2017, several months before the hearing on the motion to dismiss. Nothing in the record suggests any pesticide was ever used under the emergency rule. Accordingly, any declaration regarding its validity would have no legal effect and the claim is therefore moot. *City of Shoreacres*, 166 S.W.3d at 830.

Wild Boar contends its APA claim falls into an exception for governmental acts capable of repetition but likely to evade review. *See id.* at 839 (outlining exception before concluding plaintiffs had failed to show its applicability). This exception applies where "the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration," and "there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 454 (Tex. App.—Beaumont 2016, no pet.) (citing *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975); *Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001)). Wild Boar's APA claim does not satisfy the exception, as the facts in this record provide no evidence the complained-of act is likely to recur. In response

5

to opposition to the emergency rule, the Department: 1) published a proposed permanent rule and invited comments, 2) held a public hearing on the proposed rule, 3) canceled the registration of the only pesticide registered under the emergency rule, 4) notified the Secretary of State that it was withdrawing the emergency rule, and 5) subsequently withdrew the proposed permanent rule.[1] In addition, the Department, in support of its motion, presented uncontroverted evidence that 1) the manufacturer of Kaput had obtained the exclusive right, conferred by the federal government for ten years, to market warfarin-based products for the abatement of feral hogs, and 2) the manufacturer had stipulated that it would suspend any and all attempts to register any warfarin-based hog toxicant in Texas. Thus, even reviewing the record in the light most favorable to Wild Boar, we conclude there is no "reasonable expectation" that the Department will reintroduce the challenged rule or that the challenged conduct might escape judicial review. *See id.*; *City of Shoreacres*, 166 S.W.3d at 830 ("This dispute was not of such short duration that the Cities could not obtain review before the issue became moot."). Despite Wild Boar's efforts to root up an applicable exception, Wild Boar's APA claim is moot. The district erred in failing to dismiss the claim, and we sustain the Department's first issue.

---

[1] The Department also announced the following position on the use of warfarin-based products as a hog deterrent: "The Texas Department of Agriculture has withdrawn rules to amend 4 TAC Section 7.30, regarding use of pesticides . . . . The Department does not administer any feral hog abatement programs, and the toxicant warfarin for use on feral hogs is ineligible to be registered for use and sale in Texas." This statement is not part of the record, and we need not rely on it to dispose of this appeal, but we take judicial notice of the fact that the Department has not reintroduced the challenged rule. *See* Tex. R. Evid. 902.

*UDJA claim and ultra vires allegations*

In its second issue, the Department argues the district court erred in failing to dismiss Wild Boar's claim for declaratory and injunctive relief from ultra vires conduct. Wild Boar's claim is grounded in the parties' competing interpretations of section 76.046 of the Agriculture Code. As relevant here, that section provides, "If the department has reason to believe that any use of a registered pesticide is in violation of a provision of this chapter or is dangerous or harmful, the department shall determine whether a hearing shall be held under Section 12.032 on denial or cancellation of registration." Tex. Agric. Code § 76.046(a). The Department interprets the phrase "shall determine whether a hearing shall be held" as affording it the discretion to decide whether a registration hearing is necessary once it becomes aware of possible dangers or harm resulting from use of a registered pesticide. Wild Boar disagrees with that construction, asking the district court to declare that the section affords no discretion to the Department once it learns of the possible dangers of a registered pesticide and arguing that the statute requires a pre-registration hearing where the Department knows of dangers associated with an unregistered pesticide. Because the Commissioner allowed the registration of Kaput without first holding a hearing on the risks associated with its use, Wild Boar alleges he and other officials exceeded the scope of their authority under the statute.

Assuming for the sake of argument that Wild Boar has otherwise pleaded a colorable ultra vires claim, the claim was already moot when Wild Boar pleaded it. By the time Wild Boar amended its petition to add this claim for relief, the Department had held a public hearing on the proposed permanent rule—a hearing that consisted almost entirely of debate over the dangers of

7

warfarin-based abatement of feral hogs. Although the hearing was held under the APA and not under the Agriculture Code, it resulted in the same public debate Wild Boar had sought to obtain through the registration hearing. It also resulted in Wild Boar's desired outcome: Kaput's emergency registration as a limited-use pesticide was canceled and the Department withdrew the only rule allowing such registration. There was thus no registration or proposed registration that the disputed statutory section might be applied to. Wild Boar argues such a registration is still possible if the Department introduces a new rule, but "[a] declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, [even if] such questions may in the future require adjudication." *Texas Health Care Info. Council v. Seton Health Plan, Inc*., 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied) (citing *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968)). Because the requested judgment would have no effect on an existing controversy, the claim is moot. *City of Shoreacres*, 166 S.W.3d at 831. We sustain the Department's second issue.

### Claim for attorney's fees

Wild Boar contends the district court retains jurisdiction over its claim for attorney's fees even if we sustain the Department's challenges to its substantive claims for relief. *See, e.g.*, *Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149 (Tex. 1988) (finding claim for fees justiciable where agency action had rendered plaintiffs' substantive claims moot). We disagree. "[A] party can recover attorney's fees from a state agency . . . only to the extent the Legislature has waived sovereign immunity." *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 702 (Tex. App.—Austin 2013, no pet.) (citing *Texas Nat. Res. Conservation Comm'n v. IT–Davy*,

8

74 S.W.3d 849, 853–854, 860 (Tex. 2002)). Wild Boar successfully obtained a temporary restraining order under section 2001.038 of the APA, which provides a private cause of action to challenge rule validity. *See* Tex. Gov't Code § 2001.038. That statute, however, "does not authorize attorney's fees." *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654 (Tex. App.—Austin 1997, no pet.).

The UDJA allows courts to "award costs and reasonable and necessary attorney's fees as are equitable and just." *See* Tex. Civ. Prac. and Rem. Code § 37.009. As explained above, however, the UDJA claim was moot at the time of filing and therefore cannot provide a basis for recovery of fees. *Giggleman*, 408 S.W.3d at 707 (reversing district court's award of attorney's fees where plaintiff had failed to establish jurisdiction under the UDJA and where pleading defect was rendered incurable once controversy was rendered moot by agency action); *see also Texas Dep't of Pub. Safety v. Salazar*, No. 03-11-00478-CV, 2013 WL 5878905, at \*8 (Tex. App.—Austin Oct. 31, 2013, pet. denied) (mem. op.) ("The issue of attorney's fees could only be a live dispute if the district court had jurisdiction over the declaratory claims to begin with."). We therefore reject Wild Boar's request that we remand its claim for attorney's fees to the district court.

**CONCLUSION**

For the reasons stated herein, we hold that the district court erred in denying the Department's motion to dismiss. We therefore reverse the order denying that motion and render judgment dismissing this matter as moot. Tex. R. App. P. 43.2(c).

9

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Reversed and Rendered

Filed:   August 8, 2018

10