ACCEPTED
04-15-00433-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/30/2015 6:15:05 PM
KEITH HOTTLE
CLERK

NO. 04-15-00433-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/30/2015 6:15:05 PM
KEITH E. HOTTLE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and
POST OAK CLEAN GREEN, INC.,

*Appellants,*

v.

GUADALUPE COUNTY GROUNDWATER
CONSERVATION DISTRICT,

*Appellee.*

**REPLY BRIEF OF APPELLANT
POST OAK CLEAN GREEN, INC.**

Christopher L. Dodson
State Bar No. 24050519
chris.dodson@bgllp.com
Mark R. Wulfe
State Bar No. 24088681
mark.wulfe@bgllp.com
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 223-2300
Facsimile:   (713) 221-1212

John A. Riley
State Bar No. 16927900
jriley@jgdpc.com
JACKSON GILMOUR & DOBBS, PC
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone:  (512) 574-8861
Facsimile:   (512) 574-8861

ATTORNEYS FOR APPELLANT POST OAK CLEAN GREEN, INC.

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

*Page*

INDEX OF AUTHORITIES.............................................................................................iii

INTRODUCTION .........................................................................................................1

ARGUMENT ................................................................................................................2

I.     The Commission Has Exclusive (Or, Alternatively, Primary) Jurisdiction Over The Subject Matter of This Suit..........................................2

      A.     The District cannot reframe its claim as unconnected to Post Oak's permit application. ....................................................................2

      B.     The District's actions make clear it understands the true nature of this dispute. ..................................................................................4

      C.     The District fails to acknowledge the statutory authority cited by Post Oak. ......................................................................................5

      D.     The District's arguments against exclusive jurisdiction not only fail, but confirm that this dispute is over the Commission's authority over the siting of landfills. ..................................................7

      E.     The District's argument regarding the Legislature's failure to enact legislation after the trial court's summary judgment ruling in this case is silly.........................................................................9

      F.     The District's amicus's reliance on Texas Attorney General Opinion GA-1011 (2013) is unfounded. ...........................................10

II.    The District's Suit Is Not Ripe. ................................................................10

      A.     The District cannot distinguish the authorities cited by Post Oak and the Commission. .......................................................................10

      B.     The petition and motion from the Denton County case are completely inapposite.......................................................................13

      C.     Arguments made by Post Oak before the trial court after its plea to the jurisdiction was denied cannot create jurisdiction. ...................13

III.    The District's Rule Cannot Be Enforced Through The UDJA ....................14

PRAYER ..................................................................................................15

CERTIFICATE OF COMPLIANCE....................................................................16

CERTIFICATE OF SERVICE .............................................................................17

APPENDIX ...............................................................................................18

# INDEX OF AUTHORITIES

*Page(s)*

**Cases**

*Blue Cross Blue Shield of Tex. v. Duenez*,
201 S.W.3d 674 (Tex. 2006) ...............................................................................3

*City of Anson v. Harper*,
216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.)......................................12

*In re Crawford & Co.*,
458 S.W.3d 920 (Tex. 2015) ...............................................................................3

*Monk v. Huston*,
340 F.3d 279 (5th Cir. 2003) .............................................................................11

*Robinson v. Central Tex. MHMR Center*,
780 S.W.2d 169 (Tex. 1989) .............................................................................10

*In re Southwestern Bell Tel. Co., L.P.*,
235 S.W.3d 619 (Tex. 2007) ...............................................................................3

*Tex. Dep't of Pub. Safety v. Deputy Sheriff's Ass'n of Bexar County*,
No. 04-07-00233-CV, 2007 WL 3355626 (Tex. App.—
San Antonio Nov. 14, 2007, pet. denied) ..................................................... 11-12

*Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*,
408 S.W.3d 696 (Tex. App.—Austin 2013, no pet.).........................................14

*Thomas v. Long*,
207 S.W.3d 334 (Tex. 2006) ...............................................................................3

*Waco Indep. Sch. Dist. v. Gibson*,
22 S.W.3d 849 (Tex. 2000)................................................................................11

**Statutes**

30 TEX. ADMIN. CODE. § 330.57(d) ........................................................................6

TEX. CIV. PRAC. & REM. CODE § 37.004.............................................................1, 14

|  |  | *Page(s)* |
| --- | --- | --- |

TEX. GOV'T CODE § 2001.038.............................................................................14

TEX. HEALTH & SAFETY CODE § 361.011 ............................................................6

TEX. HEALTH & SAFETY CODE § 361.151 ............................................................7

TEX. HEALTH & SAFETY CODE § 361.154 ............................................................7

TEX. HEALTH & SAFETY CODE § 363.022(a) ........................................................6

TEX. WATER CODE § 26.121(a)(1) ........................................................................6

TEX. WATER CODE. § 36.102 ..............................................................................14

TEX. WATER CODE § 49 .......................................................................................10

TEX. WATER CODE § 51 .......................................................................................10

## Rules

Guadalupe County Groundwater Conservation District Rule 8.1 ...................*passim*

TEX. R. APP. P. 9.4(i)(1) .......................................................................................16

TEX. R. APP. P. 9.4(i)(2)(B).................................................................................16

TEX. R. APP. P. 9.4(i)(3), I....................................................................................16

TEX. R. APP. P. 38.1(g)...........................................................................................4

## Other Authorities

Tex. Att'y Gen. Op. No. GA-1011 (2013).............................................................10

# INTRODUCTION

The District devotes much of its Brief to insisting Post Oak and the Commission have "re-fram[ed] the District's declaratory-judgment claim as a challenge to an as-yet-unissued solid waste disposal permit." Appellee's Br. 9. This dispute, however, was first described in the District's Original Petition, the opening sentence of which "complains of [Post Oak's] pursuit of a landfill permit." CR. 4; *see also* CR. 1193 (making the same charge in the Live Petition). In fact, it is the District and its amicus who are attempting to recast the subject matter of the District's claim as anything other than what it is: the Commission's consideration of Post Oak's landfill permit application. Because the Texas Legislature has made the Commission responsible for this permitting process and the Commission has yet to make a determination as to Post Oak's application, the District's claims must be dismissed on exclusive (or, alternatively, primary) jurisdiction and ripeness grounds. Moreover, the District's rule cannot be enforced through the Uniform Declaratory Judgments Act ("UDJA").

# ARGUMENT

## I. The Commission Has Exclusive (Or, Alternatively, Primary) Jurisdiction Over The Subject Matter of This Suit.

### A. *The District cannot reframe its claim as unconnected to Post Oak's permit application.*

The District's pleadings reveal that this dispute is over Post Oak's right to develop a landfill pursuant to a Commission-issued landfill permit. This lawsuit followed the District's initial and continuing participation in the Commission's permitting process, through which it is making the same complaints it does in this suit about the suitability of the proposed landfill site. CR. 59-64, 1200. Not only does the District's petition complain of Post Oak's "pursuit of a landfill permit," it renames Post Oak "the 'Landfill Applicant.'" CR. 4.

The District and its amicus mischaracterize Appellants' argument as depending on the Commission having the authority to interpret the District's rules. The District contends that "TCEQ and Post Oak . . . argue that the trial court was without jurisdiction because TCEQ has exclusive or primary jurisdiction to address . . . whether Post Oak's proposal . . . violates the District's rules." Appellee's Br. 24. To the contrary, Post Oak has never claimed that the Commission has the authority to interpret or apply the District's rules. The issue here is not the control of the Commission over the District's rulemaking process. It is the District's

attempt to disrupt the Commission's exclusive permitting authority through the courts.

As explained in Post Oak's Opening Brief, whether Post Oak may construct a landfill in the location it proposes is a question the Texas Legislature has entrusted the Commission to resolve. "A party cannot circumvent an agency's exclusive jurisdiction by filing a declaratory-judgment action if the subject matter of the action is one 'over which the Legislature intended the [administrative agency] to exercise exclusive jurisdiction.'" *Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006) (alteration in original) (quoting *Thomas v. Long*, 207 S.W.3d 334, 342 (Tex. 2006)). "Whether [a regulatory scheme] provides the exclusive process and remedies . . . does not depend on the label of the cause of action asserted." *In re Crawford & Co.*, 458 S.W.3d 920, 926 (Tex. 2015). "Instead, in assessing whether a claim falls within [an agency's] exclusive jurisdiction, courts must look at the substance of the claim." *Id.*

Like the District here, the plaintiffs in *In re Southwestern Bell Telephone Co., L.P.*, "argue[d] that the [agency did] not have jurisdiction because it [could] not grant the relief they request[ed]." 235 S.W.3d 619, 625 (Tex. 2007). The court found that "[a] close inspection of Plaintiff's claims, however, reveal[ed] that the Legislature intended that the [agency] determine this type of dispute and gave it the power to grant the relief requested." *Id.* Here, the District objects to the siting of

Post Oak's proposed landfill, a decision squarely within the exclusive jurisdiction of the Commission. The District may oppose and is opposing the siting, construction, and operation of the landfill before the Commission through the procedures established by the regulatory scheme.

**B.** ***The District's actions make clear it understands the true nature of this dispute.***

The District's conduct demonstrates the real purpose of this suit. In its Brief, the District improperly references a statement by the Commission's Executive Director regarding the Commission's lack of authority to interpret a District rule made in response to a comment received regarding Post Oak's application. Appellee's Br. 11. This reference to facts outside of the record should be disregarded. *See* TEX. R. APP. P. 38.1(g). But, should the court consider recent proceedings regarding Post Oak's permit application, it should also consider that the District has submitted the trial court's order granting partial summary judgment to the District in this case as evidence in the administrative hearing on the application. *See* District's Exhibit List and Cover Letter and Order on Motion for Partial Summary Judgment, attached in Appendix, Tabs A & B. The District's using an order from this suit in the administrative proceeding reveals its true intentions and that Appellants' characterization of this suit as an "effort to block the Commission's issuance of Post Oak's requested permit" is no unfounded "grouse," Appellee's Br. 25, but rather the confirmed reality.

This duplicity of the District completely undermines the claims it makes in its Brief. The District disingenuously purports to have initiated a lawsuit seeking the application of its own rule, decrying at every turn Post Oak's and the Commission's identification of the suit for the attempt to undermine the Commission's permitting process that it is. Tellingly, after securing partial summary judgment in its favor, the District took no action seeking enforcement of the trial court's ruling, but rather seeks to introduce the ruling as evidence in the permitting process it contends is separate from this dispute. The District's obvious goal through its suit is to block the Commission's permitting authority, but the trial court lacks jurisdiction to do so.

C.   ***The District fails to acknowledge the statutory authority cited by Post Oak.***

The District ignores the statutory authority evidencing the Commission's exclusive jurisdiction marshaled by Post Oak in its Opening Brief. Neither the District nor its amicus address how the Solid Waste Disposal Act ("SWDA") provides that the Commission "is responsible . . . for the management of municipal solid waste . . . and shall coordinate municipal solid waste activities"; "shall accomplish the purposes of this chapter by controlling all aspects of the management of municipal solid waste"; and "has the powers and duties specifically prescribed by this chapter relating to municipal solid waste management . . . and all

other powers necessary or convenient to carry out those responsibilities under this chapter." TEX. HEALTH & SAFETY CODE § 361.011.

The District and its amicus further ignore the detailed regulations supporting the SWDA that demonstrate the pervasive nature of the regulatory scheme. *See, e.g.*, 30 TEX. ADMIN. CODE § 330.57(d) (stating that permit applications must "provide the executive director data of sufficient completeness, accuracy, and clarity to provide assurance that operation of the site will pose no reasonable probability of adverse effects on the health, welfare, environment, or physical property of nearby residents or property owners"). The District and its amicus also ignore Post Oak's citation to other statutes that reflect the primacy of the Commission's authority, such as the Comprehensive Act's delegation to the Commission of the power to implement and enforce that act's provisions regarding the management of municipal solid waste. TEX. HEALTH & SAFETY CODE § 363.022(a); *see also* TEX. WATER CODE § 26.121(a)(1) ("[N]o person may . . . discharge . . . municipal waste . . . into or adjacent to any water in the state" "*[e]xcept as authorized by the [C]omission.*" (emphasis added)).

In addition, the District and its amicus have no answer for how the sharply limited authority given to counties and municipalities to prohibit solid waste disposal in designated areas can be squared with the District's attempt to unconditionally prohibit the siting of landfills within its entire territory. As

explained in Post Oak's Opening Brief, the Comprehensive Act's provisions regarding the prescribed authority of some local government bodies' abilities to prohibit the disposal of solid waste in certain areas draw into sharp relief how the judgment requested by the District would impermissibly interfere with the Commission's authority to approve the siting of waste facilities. The amicus brief of Waste Management of Texas, Inc. and Texas Association of Business also covers this issue. But the District does not bother to respond.

D. ***The District's arguments against exclusive jurisdiction not only fail, but confirm that this dispute is over the Commission's authority over the siting of landfills.***

The District and its amicus further acknowledge the true nature of this dispute through their attempts to portray the Commission's jurisdiction over the siting of municipal solid waste landfills as shared rather than exclusive. The District's amicus notes that "the Legislature vested counties with the authority to issue municipal solid waste permits" under certain circumstances and that, "[i]f an applicant obtains a solid waste permit from the County, it need not obtain a permit from the TCEQ." Schertz-Seguin Amicus Br. 17-18. The SWDA, however, provides not only that county rules regarding the management of solid must be approved by the Commission, but that the Commission "may supersede any authority granted to or exercised by a county" under the act. TEX. HEALTH & SAFETY CODE §§ 361.151, 361.154. Moreover, this delegation is limited to

-7-

counties. The District is not a county, so any authority delegated to counties is, without more, not also delegated to the District.

The District also emphasizes that applicants for landfill permits such as Post Oak must obtain additional permits for activities incidental to the construction and operation of the landfill. Appellee's Br. 30-31. For example, in its application Post Oak reported that it was seeking a permit from the Texas Department of Transportation ("TxDOT") for driveway access to TxDOT-regulated roads and authority from the Railroad Commission of Texas for the plugging of abandoned oil and gas wells. CR. 694. These additional authorizations do not infringe on the Commission's jurisdiction over the siting of solid waste landfills. They merely reflect that operating a landfill may implicate other areas of regulation. The District's attempt to ban the construction of landfills within its territory has nothing to do with these ancillary permits.[1]

The purpose behind the Commission's jurisdiction over the siting of landfills is demonstrated perfectly by the District's amicus. The amicus devotes a significant portion of its brief to complaining of the dangers of the proposed

---

[1] The District's amicus's attempt to help the District with evidence outside the record actually hurts the District's cause. Rule 8.1 purports to ban the application of waste not only over "the outcrop of the Wilcox Aquifers," Schertz-Seguin Amicus Br. 6, but over "any aquifer." This ban would cover the entire geographic boundary of the District, notwithstanding the District's amicus's representation to the Court.

landfill. Similar complaints are not uncommon in the context of any landfill permit application. Landfills, while not always welcomed by local communities, provide a necessary, highly regulated and environmentally protective waste disposal function. Recognizing this reality, the Texas Legislature entrusted the Commission with exclusive jurisdiction over siting decisions. This ensures that objections to proposed landfills will be heard and resolved by objective regulators with subject-matter expertise, with appropriate participation by those opposed. Without this centralized approach, every landfill application is destined to be confounded by local opposition and resolved inconsistently in district courts instead of by the state-sanctioned regulators.

E. *The District's argument regarding the Legislature's failure to enact legislation after the trial court's summary judgment ruling in this case is silly.*

The District finds it notable that the Legislature convened after the trial court issued its summary judgment ruling in this case and did not pass legislation clarifying the Commission's exclusive jurisdiction. Of course, the Legislature does not take action every time it disagrees with a trial court's summary judgment order, nor is it required to do so to avoid taking a position regarding a statute's interpretation. This case has not even reached final judgment on the merits, much less been subject to appellate review. No implication can be drawn from the Legislature's failure to expressly overrule a trial-court summary judgment ruling

-9-

issued earlier this year. *See Robinson v. Central Tex. MHMR Center*, 780 S.W.2d 169 (Tex. 1989) (adopting interpretation of statute in part because Legislature, in the *thirteen years* following a *Texas Supreme Court* opinion interpreting the statute, had not only failed to revise the language, but had *reenacted* the statute without change).

F. ***The District's amicus's reliance on Texas Attorney General Opinion GA-1011 (2013) is unfounded.***

The Texas Attorney General Opinion relied upon by the District's amicus has nothing to do with the issues to be decided here. The opinion addressed a water control and improvement district's authority under Water Code Chapters 49 and 51 to regulate weeds and illegal dumping on overgrown lots in the district. Not only does the District not have the powers granted by Chapter 51, but the issues addressed in the opinion do not implicate the Commission's exclusive jurisdiction over the siting of municipal waste landfills. Whether a district can regulate illegal dumping on an overgrown lot has no bearing on this dispute.

II. **The District's Suit Is Not Ripe.**

A. ***The District cannot distinguish the authorities cited by Post Oak and the Commission.***

The District and its amicus have failed to explain how this suit is ripe for adjudication. Post Oak has never contended, as the District insists it has, that a declaratory judgment may not be sought until an alleged violation takes place.

Appellee's Br. 16. Rather, because Post Oak's permit application has not been granted by the Commission, "determining whether [the District] has a concrete injury depends on contingent or hypothetical facts, [and] upon events that have not yet come to pass." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000).

The District's amicus contends that the cases addressing ripeness cited in Post Oak's Opening Brief may be ignored because they involved takings claims. However, the Fifth Circuit made clear in *Monk v. Huston* that "[a]lthough plaintiffs' claim need not satisfy the specific test applicable to takings claims, it still must comply with the principles governing ripeness determinations generally." 340 F.3d 279, 282 (5th Cir. 2003). *Monk* found the takings case it relied on to be persuasive, if not controlling, and found the claim at issue not to be ripe because "the TCEQ permitting process ha[d] not yet run its course." *Id.*

The District and its amicus insist that *Monk* is distinguishable because the District seeks the interpretation of Rule 8.1. However, the District does not seek the *construction* of its own rule (which would be a peculiar suit for the District to bring). Rather, it requests that the court *apply* Rule 8.1 in the context of Post Oak's proposed landfill. Either way, the District's claim is unripe, as demonstrated by *Department of Public Safety v. Deputy Sheriff's Association of Bexar County*, cited by the Commission in its Opening Brief and unmentioned in the briefs of the

-11-

District or its amicus. No. 04-07-00233-CV, 2007 WL 3355626, at *1-3 (Tex. App.—San Antonio Nov. 14, 2007, pet. denied). In that case, the plaintiff sought a declaratory judgment regarding whether certain police officers were exempt from discipline by the Texas Department of Public Safety pursuant to the Texas Occupation Code. The suit was brought while an investigation regarding the officers was underway but had not concluded. The court found the suit not to be ripe because "[w]hether the Department [would] reach an adverse decision against the officers in question, impose civil penalties, or refer the matter for criminal prosecution [was] unknown at [that] time." *Id.* at *2. "Consequently, the relief [sought], at [that] point, would [have been] based on hypothetical or contingent events that may not occur." *Id.* at *3.

This case is no different. Because the permit may not be issued, any declaration regarding the District's rule would be premature.[2] As explained in *City of Anson v. Harper*, Texas appellate "courts have held that a declaratory judgment action is premature if governmental proceedings which will impact the parties' respective rights remain pending." 216 S.W.3d 384, 394 (Tex. App.—Eastland 2006, no pet.). There is no reason for this court to find differently.

---

[2] As the District concedes in its Brief, the trial court erred in finding that a permit had already been granted to Post Oak by the Commission. *See* Appellee's Br. 10. This factual error by the trial court may have led it to wrongly determine that the District's claim is ripe.

**B.** *The petition and motion from the Denton County case are completely inapposite.*

The District's reliance on the petition in a suit brought by the Commissioner of the Texas General Land Office is misplaced. Contrary to the District's contentions, that case has nothing to say about ripeness in the context of pending agency action. Rather, it alleges that the General Land Office leases state-owned mineral interests and at the time of suit "ha[d] active leases within the City of Denton." Appellee's Br. App. C at ¶ 4.8. The District attempts to analogize that case to this one by saying that the General Land Office did not contend that the minerals were the subject of any permits or pending permits. These active leases themselves, however, would have been legal interests immediately affected by the municipal ordinance. There is simply nothing comparable in this case given the absence of a Commission-issued permit.

**C.** *Arguments made by Post Oak before the trial court after its plea to the jurisdiction was denied cannot create jurisdiction.*

The District contends that Post Oak's having "argued to the trial court that the District's rule is preempted by the Solid Waste Disposal Act" demonstrates that the District's claim is ripe. Appellee's Br. 16. Post Oak made these arguments only after its plea to the jurisdiction on ripeness grounds was dismissed; they have no bearing on the jurisdictional question.

## III. The District's Rule Cannot Be Enforced Through The UDJA

Finally, the District has failed to distinguish *Texas State Board of Veterinary Medical Examiners v. Giggleman*'s conclusion that an administrative rule cannot form the basis of a claim pursuant to the Uniform Declaratory Judgments Act ("UDJA"). 408 S.W.3d 696, 707 (Tex. App.—Austin 2013, no pet.). *Giggleman*'s holding is straightforward: "declarations . . . concerning the proper construction of [an agency's] rules, as opposed to a statute[,] . . . fall[] outside the UDJA altogether." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 37.004)  Neither the District nor its amicus cite a case addressing whether an administrative rule may be enforced through the UDJA given its limited authorization.

Where the Texas Legislature has intended to authorize suits regarding the applicability of administrative rules it has done so clearly. *See* TEX. GOV'T CODE § 2001.038 (authorizing declaratory judgment claims against state agencies regarding the "validity or applicability" of a "rule").

The District's amicus treats the Water Code's provision that a district may enforce its rules "by injunction, mandatory injunction, or other appropriate remedy in a court of competent jurisdiction" as authority for the district bringing suit under the UDJA. Schertz-Seguin Amicus Br. 12-13 (citing TEX. WATER CODE § 36.102). Bringing suit under the UDJA, however, is not an "appropriate remedy." The UDJA's exclusion of claims challenging the construction of "rules" is not

-14-

inconsistent with this authorization; it simply means that a particular procedural device is unavailable to the District. The District may still otherwise enforce its rules by "injunction . . . or other appropriate remedy."

## **PRAYER**

For these reasons, Appellant Post Oak Clean Green, Inc. prays that the Court reverse the trial court's order denying the Commission's plea to the jurisdiction and render judgment dismissing the District's claim. Appellant also prays for such further relief to which it may be entitled.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: /s/ *Christopher L. Dodson*
    Christopher L. Dodson
    State Bar No. 24050519
    chris.dodson@bgllp.com
    Mark R. Wulfe
    State Bar No. 24088681
    mark.wulfe@bgllp.com
    711 Louisiana Street, Suite 2300
    Houston, Texas 77002-2770
    Telephone: (713) 223-2300
    Facsimile: (713) 221-1212

JACKSON GILMOUR & DOBBS, PC

John A. Riley
State Bar No. 16927900
jriley@jgdpc.com
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone:  (512) 574-8861
Facsimile:    (512) 574-8861

ATTORNEYS FOR APPELLANT
POST OAK CLEAN GREEN, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this brief complies with TEX. R. APP. P. 9.4(i)(2)(B) because it consists of 3,313 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Christopher L. Dodson*
Christopher L. Dodson

-16-

## CERTIFICATE OF SERVICE

I certify that a copy of the Reply Brief of Appellant Post Oak Clean Green, Inc., was served on counsel of record by EFile on the 30th day of November 2015, addressed as follows:

Mr. Ken Paxton                                     VIA EFILE
Mr. Charles E. Roy
Mr. Scott A. Keller
Mr. Bill Davis
Ms. Nancy Elizabeth Olinger
Ms. Cynthia Woelk
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Telephone:  (512) 936-1896
Facsimile:   (512) 370-9191
*Attorneys for Texas Commission on Environmental Quality*

Ms. Marisa Perales                                 VIA EFILE
FREDERICK, PERALES, ALLMON & ROCKWELL, PC
707 Rio Grande, Suite 200
Austin, Texas 77552-6894
*Attorneys for Guadalupe County Groundwater Conservation District*

/s/*Christopher L. Dodson*
Christopher L. Dodson

#5058673.4

-17-

## APPENDIX

**Document**                                                                                  **Tab**

District's Exhibit List ...................................................................................... A

Cover Letter and Order on Motion for Partial Summary Judgment ........................ B

# EXHIBIT A

| | | | |
|---|---|---|---|
| APPLICATION BY POST OAK | § | BEFORE THE STATE OFFICE | |
| CLEAN GREEN, INC. FOR A NEW | § | | |
| TYPE I MUNICIPAL SOLID WASTE | § | OF | |
| LANDFILL IN GUADALUPE | § | | |
| COUNTY, TEXAS | § | ADMINISTRATIVE HEARINGS | |

## GUADALUPE COUNTY GROUNDWATER CONSERVATION DISTRICT'S PREFILED TESTIMONY AND EXHIBITS

| Exhibit No. | Tab No. | Document Title | Date |
|---|---|---|---|
| 1 | District 1 | Cover Letter and Order on Plaintiff's Motion For Partial Summary Judgment | 1/16/15 |
| 2 | District 2 | Prefiled Testimony of William B. Klemt | 10/12/15 |
| 2A | District 2A | Resume & Selected Bibliography of William B. Klemt | 6/1/15 |
| 2B | District 2B | Sketch of proposed landfill site in relation to Wilcox aquifer outcrop | 10/12/15 |
| 2C | District 2C | Geologic Cross-Sections, Figures 4-10through 4-16, Part III, Application | 10/22/14 |
| 2D | District 2D | General Geological Interpretation of Geophysical Boring Logs, Part III, Application | 8/14 |
| 2E | District 2E | Sand Groundwater Gradient Map, Part III 4I-7, Figure 2, Application | 10/22/14 |

# EXHIBIT B



*W.C. Kirkendall*
2nd 25th Judicial
District Judge

COLORADO, GONZALES, GUADALUPE & LAVACA COUNTIES

January 16, 2015

Peter J. Stanton
*Law Offices of Peter J. Stanton*
Stanton@pstantonlaw.com

Marisa Perales
*Frederick, Perales, Allmon
and Rockwell*
Marisa@LF-Lawfirm.com

Mark L. Walters
*Assistant Attorney General*
*Environmental Protection Division*
mark.walters@texasattorenygeneral.gov

Patrick W. Lindner
*Davidson Toilo Ream & Garza, P.C.*
plindner@dtrglaw.com

Re:    No. 14-0863-CV; Guadalupe County Groundwater Conservation District v. Post Oak
       Clean Green, Inc.; In the District Court; Guadalupe County, Texas

Counsel,

I enclose an order on plaintiff's amended motion for summary judgment which has been signed and entered today. I have taken the liberty of composing my own order, in the form of an opinion. This is something I do rarely and only in cases which are significant and where I believe an explanation of my reasoning can assist the parties.

I understand there are still matters to be decided such as the objection to TCEQ's intervention, the ultimate relief to be granted, attorney fees, if any, as well the counter-claims by defendant. The parties may set these for hearing by contacting the court coordinator.

Sincerely,

W.C. Kirkendall

No. 14-0863-CV

| GUADALUPE COUNTY | § | IN THE DISTRICT COURT |
| GROUNDWATER CONSERVATION | § | |
| DISTRICT | § | |
| | § | 2ND 25TH JUDICIAL DISTRICT |
| vs. | § | |
| | § | |
| POST OAK CLEAN GREEN, INC. | § | GUADALUPE COUNTY, TEXAS |

## ORDER ON PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court, having reviewed the plaintiff's motion, the responses by the defendant and the TCEQ, as well as all objections and summary judgment evidence, makes the following rulings:

### Chronology

In October 2013, Defendant Post Oak Clean Green, Inc. ("Post Oak") filed a permit application with the TCEQ for a proposed municipal solid waste landfill (the "Proposed Landfill").[1] Post Oak intends to construct and operate the Proposed Landfill within the outcrop area of the Carrizo-Wilcox aquifer recharge zone, an area that is undisputedly inside the boundaries of the Guadalupe County Groundwater Conservation District (the "District").[2]

The District is vested by the Legislature with the independent power to "make and enforce rules...to provide for conserving, preserving, protecting, and recharging of the groundwater," in

---

[1] Post Oak amended its permit application in August 2014 in response to TCEQ's staff letter noting deficiencies in its application materials.

[2] Post Oak has, at times during this lawsuit, disputed whether the Proposed Landfill would lie within the outcrop area of the aquifer recharge zone. However, its own application materials submitted to TCEQ describe the Proposed Landfill as "located within the outcrop area of the Carrizo-Wilcox aquifer zone." Post Oak's August 15, 2014 permit application, Part II, p. 45.

2

order to, among other things, "prevent degradation of water quality." The District is also explicitly given the right to enforce its rules "by injunction, mandatory injunction, or other appropriate remedy in a court of competent jurisdiction." *See* Tex. Water Code §§ 36.101-102.

Pursuant to the power granted to it by the Legislature, the District adopted the Rules of the Guadalupe County Conservation District (the "Rules") in 2001. Among them is Rule 8.1, which provides in part: "In no event may waste or sludge be permitted to be applied in any manner in any outcrop area of any aquifer within the Guadalupe County Groundwater Conservation District."[3]

The Court takes judicial knowledge that TCEQ granted Post Oak a permit to construct and operate the Proposed Landfill on the site within the outcrop area of the Carrizo-Wilcox aquifer recharge zone.

In this lawsuit, the District seeks a declaration, pursuant to the Uniform Declaratory Judgments Act, that disposing of solid waste at the Proposed Landfill site violates Rule 8.1. Pl.'s Mot. Partial Summ. J. at par. 31. It complains that the Proposed Landfill presents unacceptable risks to the Carrizo-Wilcox aquifer, one of the State's major aquifers, and that Post Oak did not notify the District of its permit application to TCEQ (despite the District's rules mandating such notice), nor has it "sought to resolve or even address the District's rules regarding disposal of waste on the outcrop of an aquifer within the District's boundaries." *Id.* at par. 20.

---

[3] The full Rules are available at: http://gcgcd.org/uploads/3/4/6/6/3466695/gcgcd_rules.pdf (Jan. 12, 2014).

3

Post Oak, for its part, argues that Rule 8.1 does not in fact ban the Proposed Landfill. It also argues that, in any event, the District's authority to ban the Proposed Landfill is preempted by the Texas Solid Waste Disposal Act. Def.'s Resp. to Pl.'s Mot. Summ. J. at par. 1.3.

**Preliminary motions**

The District's motion to strike Post Oak's evidence is OVERRULED.

The District's objections to Post Oak's evidence are OVERRULED.

Post Oak's objections to the District's evidence are OVERRULED.

TCEQ has attempted to join this case as an intervenor, and the District has filed an objection to that intervention. No hearing has been held on that objection, and no ruling is here made. Even if TCEQ were not allowed to intervene, the Court would consider their filing as an *amicus* brief.

**Declaratory Judgment Act**

As an initial matter, TCEQ argues this lawsuit is not a proper declaratory judgment action under the Uniform Declaratory Judgment Act ("UDJA"). TCEQ alleges that the UDJA allows for claims that challenge the construction of a "statute" or "municipal ordinance," but not an agency rule.

The UDJA provides that "[a] person…whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of

construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). "The Act is a remedial statute, the purpose of which is to settle and afford relief from uncertainty and insecurity..., and it is to be liberally construed and administered." *Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.). A declaratory judgment action is "an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities." *Cobb v. Harrington*, 190 S.W.2d 709, 713 (1945).

Groundwater conservation districts were explicitly vested by the Legislature with the right to enforce their rules "by injunction, mandatory injunction, or other appropriate remedy in a court of competent jurisdiction." *See* Tex. Water Code Secs. 36.101-102. In appropriate circumstances, courts have allowed the UDJA to be used to interpret conservation district rules. *See, e.g. Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 212 S.W.3d 683, 696 (Tex. App.—Austin 2006), *rev'd on other grounds*, 291 S.W.3d 392 (Tex. 2009) (holding declaratory judgment action was a proper vehicle to challenge the validity of a rule promulgated by Edwards Aquifer Authority). For instance, in *City of Aspermont v. Rolling Plains Groundwater Conservation District*, a conservation district had filed suit against the city for failure to comply with the district's rules and regulations. 258 S.W.3d 231, 236 (Tex. App.—Eastland 2008), review granted, judgment aff'd, 353 S.W.3d 756 (Tex. 2011). The Court of Appeals held that the district had asserted "a viable request for declaratory relief for present and future purposes," and that it was entitled to "a declaration regarding whether [the city] is subject to and must comply with the rules and regulations of [the conservation district]." *Id.*

The only case cited by TCEQ does not address the authority of a groundwater conservation district to enforce its rules; instead, it concerns an instance in which the plaintiff had asserted a UDJA claim that was "merely redundant of or incidental to" another of his claims. *Texas State Bd. of Veterinary Med. Examiners v. Giggleman*, 408 S.W.3d 696, 707 (Tex. App.—Austin 2013, no pet.).

In the present case, the District has sued Post Oak under the UDJA for failure to comply with its rules. Its claim is not redundant of or incidental to any other claim asserted (in fact, no other claim has been asserted). Therefore, the UDJA is a proper vehicle for this suit.

**Preemption**

Post Oak also argues that the Solid Waste and Disposal Act preempts the District from prohibiting the disposal of solid waste at the Proposed Landfill. *See* Texas Health and Safety Code § 361.001 *et seq.* (the "Solid Waste Disposal Act" or the "Act"). Preemption is typically divided into two categories: express and implied. *See, e.g. City of Houston v. BCCA Appeal Group, Inc.*, 2013 WL 4680224 at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. filed).[4]

---

[4] TCEQ, instead of making a preemption argument, spends the majority of its brief arguing that the Court lacks jurisdiction in this case because TCEQ has exclusive or primary jurisdiction to decide whether Post Oak qualifies for a landfill permit. However, this case does not involve judicial review of an agency decision. Although TCEQ does its best to reframe this lawsuit as one in which the District is seeking to

6

## A.     Express Preemption

Here, no party argues that the Act expressly preempts the District's authority to enact Rule 8.1, and the statutory language does not support such a reading. In fact, the Act expressly states that, except as specifically provided in the Act, it "does not diminish or limit the authority of the [TCEQ], the Texas Department of Health, or a local government in performing the powers, functions, and duties vested in those governmental entities by other laws." *Id.* § 361.039. This Court has searched in vain for any express preemption.

## B.     Implied Preemption

Post Oak does argue, however, that the Legislature impliedly preempted regulation of solid waste facilities ("SWFs") by the District—and all other local regulatory authorities—by implementing a "comprehensive regulatory regimen" in the Solid Waste Disposal Act. In other words, Post Oak argues that the Act precludes any local authority from making any rules or regulations whatsoever that would impact SWFs. This Court, however, cannot find anything in

---

challenge TCEQ's process and/or permitting decision, this Court has already held that this lawsuit is not a collateral attack on a TCEQ decision or order. Instead, as the District has repeatedly explained in its briefing and as the Court has already held, this lawsuit is an attempt by the District to enforce its own Rule 8.1. The District has been vested by the Legislature with the independent power to "make and enforce rules…to provide for conserving, preserving, protecting, and recharging of the groundwater or of a groundwater reservoir or its subdivisions" in order to prevent degradation of water quality, and is explicitly given the right to enforce its rules "by injunction, mandatory injunction, or other appropriate remedy in a court of competent jurisdiction." *See* Tex. Water Code Secs. 36.101-102. Because no TCEQ permitting (or any other) decision is at issue here, TCEQ's arguments regarding exhaustion and its exclusive and/or primary jurisdiction are immaterial.

the language of the Act that indicates the Legislature intended to make such a drastic grant of absolute power to TCEQ.

The mere fact that the District is attempting to regulate the same subject matter as the State does not, in and of itself, mean that the Legislature intended to preempt such local regulation. *City of Houston*, 2013 WL 4680224 at *7 (citing *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990)); *Brooks v. State*, 226 S.W.3d 607, 610-11 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted) ("In the absence of express limitations, there is nothing that prevents a city from enacting an ordinance covering the same subject as state or federal regulations.").

In arguing that the Legislature intended the Solid Waste Disposal Act to preempt any and all local authority, Post Oak argues that the regulations implementing the Act provide that once a permit has been issued for a facility by the TCEQ, "the owner or operator of the facility does not need to obtain a separate license for the same facility from...a political subdivision," such as the District. 30 Texas Admin. Code § 330.23(g). But no party in this case contends that the District is requiring a separate permit or license for the Proposed Landfill. Post Oak also points to a provision of the Act mandating that TCEQ shall "accomplish the purposes of this chapter by controlling all aspects of the management of municipal solid waste[.]" Tex. Health & Safety Code § 361.011(a). Post Oak ignores, however, that the provision goes on to qualify that TCEQ shall do so "by all practical and economically feasible methods consistent with its powers and duties under this chapter *and other law.*" *Id.* (emphasis added).

8

The Texas Legislature has expressly stated that "[g]roundwater conservation districts...are the state's preferred method of groundwater management through rules developed, adopted, and promulgated by a district in accordance with the provisions of this chapter," and it has vested the districts with broad power to make rules to protect the groundwater and prevent degradation of water quality. Tex. Water Code §§ 36.101-102; 36.0015. Likewise, the Legislature has specified that Chapter 36, which creates and empowers groundwater conservation districts, "prevails over any other law in conflict or inconsistent with this chapter, except any special law governing a specific district...." *Id.* § 36.052

Post Oak argues that this case is similar to *Southern Crushed Concrete v. City of Houston*, in which the Texas Supreme Court held that a city ordinance was impliedly preempted by the Texas Clean Air Act. 398 S.W.3d 676, 677 (Tex. 2013), *reh'g denied* (June 13, 2013). In that case, the city had denied the plaintiff a permit to move its concrete crushing facility to a new location, even though the TCEQ had previously issued a permit authorizing the construction of the facility at the proposed location. *Id.* The Supreme Court found the city's ordinance was preempted by the plain language of the Clean Air Act. It made clear its decision rested squarely on the fact that "the plain language of [the Clean Air Act] *unmistakably* forbids a city from nullifying an act" authorized by the TCEQ. *Id.* at 679 (emphasis added).

Whereas the Clean Air Act unmistakably forbid the city from enacting an ordinance that conflicted with TCEQ's implementation of the Clean Air Act, the Solid Waste Disposal Act at issue in this case contains no such prohibition—unmistakable or otherwise.[5] In fact, Post Oak

---

[5] The Supreme Court in *Southern Crushed Concrete* relied on a provision in the Texas Clean Air Act that explicitly states that a city ordinance "may not make unlawful a condition or act approved or authorized

9

*acknowledges* that the Solid Waste Disposal Act does not contain a provision like the one the Court relied on in *Southern Crushed Concrete* to find preemption, but contends that "the principle is the same." Post Oak is wrong. The entire basis of the preemption finding in *Southern Crushed Concrete* was the plain language of the statute at issue, which unmistakably forbids the city's ordinance. Here, there is no prohibition by the Legislature against a rule by the District protecting groundwater from impact by SWFs, and this Court declines to create one.

Where the Legislature omits a limiting provision in a statute, courts must presume that the omission has a purpose. *Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998). Here, it is clear the Legislature knew how to protect the TCEQ's permitting jurisdiction from political subdivisions, such as the District, had it intended to do so. For instance, the Legislature *did* make clear in the Act that it was implementing a comprehensive, all-inclusive regulatory scheme for *hazardous* waste facilities, stating that "[a] local government or other political subdivision of the state may not adopt a rule or ordinance that conflicts with or is inconsistent with the requirements for hazardous waste management facilities as specified by the rules of the [TCEQ] or by a permit issued by the [TCEQ]." Tex. Health & Safety Code § 361.095(b). The same could have been said about SWFs, but was not.

However, instead of carrying over this limitation on local governments and political subdivisions to the rest of the Act, the Legislature did the opposite—it made clear that the subchapter on hazardous waste "does *not* limit the powers and duties of a local government or other political

---

under [the TCAA] or the [TCEQ]'s rules or orders." Tex. Health & Safety Code § 382.113(b). The plain language of this section "unmistakably forbids a city from nullifying an act that is authorized by either the TCAA or...[TCEQ's] rules or orders." *Id.* at 679. No such language exists in the Solid Waste Disposal Act.

10

subdivision of the state as conferred by this or other law." *Id.* § 361.096(a) (emphasis added). Obviously, if the Legislature had intended the Act to preempt regulation of all SWFs by local authorities, there would have been no need to specifically prohibit such entities from regulating hazardous waste facilities (a small subset of solid waste facilities).

"When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, we generally abide by the rule that such silence is intentional." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 (Tex. 2013), reh'g denied (Nov. 22, 2013). Here, the Legislature expressed its intent that local governments and political subdivisions have no power to adopt any rule or ordinance inconsistent with a permit issued by the TCEQ for a hazardous waste facility. It did not do so for the type of SWF at issue in this case. The Court must assume the Legislature's omission was intentional.

In short, the Court cannot find that the Legislature enacted a comprehensive regulatory regime with respect to SWFs that preempts local, democratically elected groundwater conservation districts from adopting any rule or ordinance pertaining thereto. The Court must assume the Legislature's omissions in the Act have meaning, and declines to read into the Act a provision that the Legislature did not include.

**Constitutionality of District's Rule**

Post Oak asserts the District's Rule 8.1 is unconstitutional under both the 14th Amendment to the United States Constitution and Article 1, § 19 of the Texas Constitution for failure to give fair

11

notice "of what conduct may be punished." The Court assumes that this refers to the fine which counsel for the District has asserted may be levied for failure to notify the District of the TCEQ application. Post Oak goes on to claim that the Rule 8.1 is unconstitutionally vague if interpreted to ban SWF.

## A.    Vagueness

The Court is required to presume that an ordinance or rule is valid, and the party challenging it has the burden to prove otherwise. *Board of Adjustment of San Antonio v. Wende 92 SW2d 424 (Tex. 2002).*

An ordinance or rule is unconstitutionally vague if it fails to give fair notice of what conduct may be prohibited or punished or it invites arbitrary and discriminatory enforcements by failing to establish guidelines. *Commission for Lawyer Discipline v Benton, 980 SW2d 425 (Tex. 1998).*

However, no more than a reasonable degree of certainty can be required. The words of an ordinance or rule do not fall short of providing a reasonable degree of certainty because they are undefined. Nor does the existence of a dispute as to a Rule's meaning necessarily render the provision unconstitutionally vague. Due process is satisfied if the prohibition is set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with. *Commission for Lawyer Discipline v. Benton, 980 S.W.2d 425, 428 (Tex. 1998).* The words need only provide a reasonable degree of certainty, and the test is relaxed when the conduct prohibited is not constitutionally protected. *Pennington v Singleton, 606 SW2d 682 (Tex.*

12

*1980); Vista Healthcare Inc. v Tex. Mutual Ins. C., 324 SW3d 264 (Tex. App. – Austin, 2010, pet. Denied); Commission for Lawyer v Benton, supra.*

In this case, Rule 8.1 of the District (entitled "Solid, Hazardous or Radioactive Waste") provides in part: "(i)n no event may waste or sludge be permitted to be applied in any manner" to any outcrop of an aquifer. It strains credulity to imagine that prohibiting the application of "waste in any manner" would not fairly put an individual on notice that a SWF is included. The words are clear and have adequate interpretation in common usage and understanding. An ordinary person exercising ordinary common sense can sufficiently understand and comply with them. Post Oak's objection to Rule 8.1 based on its constitutionality is overruled.

**B.     Fine**

Rule 8.1 also requires persons seeking permits for waste facilities to give the District notice of the application within 10 days of its filing. The District takes the position it may fine Post Oak for failure to give notice, but the summary judgment evidence contains no showing any fine has been assessed. Rule 9.6 of the District requires the board of the District to assess any fine.

Rule 9.5 provides that the failure to give notice is a "minor violation," and Rule 9.6 provides the maximum penalty of $100 per violation. The failure to give notice about the application is not a continuing violation such as an illegal well operating within the district.

Therefore, the maximum fine for failure to give the required notice is $100, and no fine has yet been assessed. The Court declines to rule regarding any hypothetical fine.

13

## Conclusion

What is a judge to do here? Defendant and TCEQ would have the Court infer a legislative intent to create an implied preemption from the detailed statutes passed regarding TCEQ's authority to permit SWFs. As plaintiff's attorney put it, "Texas has adopted a plan to take out the garbage."

But the question is: does that plan, if any, exclude groundwater conservation districts and other local political subdivisions not mentioned or restricted in Chapter 361?

The use and protection of water is a signal issue for our times in Texas, particularly in fast-growing Central Texas. In fact, TCEQ has adopted a specific provision, Rule § 330.549, prohibiting SWFs from being placed over the Edwards Aquifer, apparently as the result of a lawsuit and because the Edwards Aquifer is the primary water source for a large urban area. If inferences are to be made, however, one might infer from this rule that SWFs are hardly benign when placed over an aquifer.

Suffice it to say, water and its protection, conservation, value and management is a contentious issue between urban and rural interests, environmentalists and developers, surface owners and water users, as well as here. A court can resolve disputes but should exercise restraint not to find law where none exists to accomplish a particular end. As Justice Scalia has written, the judicial

14

power is "the power to say what the law is, not the power to change it". *James M. Beam Distilling Co. v Georgia, 501 US 833 (1991)*

Matters as important and as fundamental as protection of groundwater need to be decided democratically by the Legislature, and courts need to restrain themselves from inferring intent from partial action or silence. No judge or committee of judges reading the "tea leaves" of legislative intent should replace the people's right to legislate such matters.

Therefore the Court finds that the GCGCD is not preempted in prohibiting the application in any manner of waste over the aquifer it manages. The District's motion for partial summary judgment is GRANTED.

SO ORDERED THIS THE _____ DAY OF JANUARY, 2015,

_____

W.C. KIRKENDALL

JUDGE